IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

UNITED STATES OF AMERICA

v.

DWAIN D. WILLIAMS

Case No. 7:09-CR-8-WLS

### _ADDENDUM_ TO THE DEFENDANT'S MOTION TO DISMISS INDICTMENT

Comes now the Defendant, Mr. Dwain D. Williams, by and through the undersigned counsel, Morad Fakhimi; and herewith submits the following _Addendum_ to his _Motion to Dismiss the Indictment_ (Doc. 37) (hereafter, the "Motion") which argued that the statute under which the Indictment (Doc. 1) seeks to invoke this Court's jurisdiction, regarding conduct occurring exclusively on foreign soil, violates the venue and compulsory process clauses of the Sixth Amendment.

With respect to the arguments submitted in his Motion, Mr. Williams only wishes to briefly add that further examination of the legislative history of the _Military Extraterritorial Jurisdiction Act of 2000_[1] (hereafter, the "Act") reveals that, at least, the Judiciary Committee of the House of Representatives believed that Congress had Article I authority to pass the Act. _See_ 106 H. Rpt. 778 at 14.[2] Because the Motion (_see_ Doc. 37 at 6 - 7) only briefly touched on Congress's Article I powers

---

[1]The Act of November 22, 2000, Pub. Law 106-523, 114 Stat. 2488 — codified at 18 U.S.C. § 3261, _et seq_.

[2]The July 20, 2000, Report accompanying H.R. 3380 contained the following statement at page 14: "...the committee finds the authority for this legislation in Article I, section 8, clauses 10, 14, 16, and 18 of the Constitution."

1

to legislate in this area (due to their patent inapplicability), Mr. Williams, noting that his argument remains the same in all respects, respectfully submits the following brief discussion addressing Congress's Article I justifications.

Mr. Williams has argued that the Act is an unconstitutional federal criminal "long-arm" statute with a global reach that results in fundamentally unfair trials in violation of the Sixth Amendment's venue and compulsory process provisions. (*see* Doc. 37). Further examination of the Act's legislative history reveals that the House believed it had authority to pass the Act pursuant to "Article I, section 8, clauses 10, 14, 16, and 18 of the Constitution"(*see* 106 H. Rpt. 778 at 14). Mr. Williams maintains that none of the aforementioned sources of Constitutional power are even remotely applicable to what the Act seeks to accomplish – and, even if such were not the case, there is no power that is committed to the Congress in Article I, the exercise of which could have the permissible effect of destroying the rights conferred to Mr. Williams in the Sixth Amendment. Nevertheless, Mr. Williams will briefly explain why no Article I power can be construed to authorize such legislation (independent of the Act's conflict with the Sixth Amendment).

First, the House believed that it could pass the Act under its power to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations" (U.S. Const. Art. I, Sec. 8, cl. 10). However, as discussed (*see* Doc. 37 at 6 - 7), the conduct charged by this indictment (inappropriate sexual contact with a minor) neither occurred on the High Seas, nor constituted a violation of international law (*see generally* Doc. 1). In fact, the Act's provisions are <u>exclusively</u> focused on punishing felonies that could be committed <u>on foreign soil</u> by co-resident

dependants of members of the Armed Forces (*see* Doc. 37 at 2 - 4). The Act, therefore, can not be defended as a legitimate exercise of this particular Constitutional grant of authority.

Second, the House believed that it could also base the Act on its power to "make Rules for the Government and Regulation of the land and naval Forces" (U.S. Const. Art. I, Sec. 8, cl. 14). However, the very "loophole" that was created nearly fifty years ago, when the Supreme Court rejected Congress's previous scheme for subjecting civilian dependants to trial by courts martial, was preceded by an unconstitutional regime founded on the same rationale that seems to have been latched-onto by Congress in passing the Act. The *reason* that the Supreme Court rejected Congress's attempt to subject these dependant civilians to court martial jurisdiction for conduct occurring on foreign soil during peacetime was that Congress's Article I power to "make Rules for the Government and Regulation of the land and naval Forces" only applied to persons that could fairly be characterized as being part of the "land and naval Forces". *See Kinsella v. United States*, 361 U.S. 234, 241 (1960) ("civilian dependent of a soldier, who was accompanying him outside the United States " is not a "person[] who can, on a fair appraisal, be regarded as falling within the authority given to Congress under Article I to regulate the 'land Forces'"); *see also Toth v. Quarles*, 350 U.S. 11, 21-22 (1955) (case involved a discharged soldier who was tried by court-martial after his discharge from the Army, for an offense committed before his discharge; the Court held that the Clause 14 "provision itself does not empower Congress to deprive people of trials under Bill of Rights safeguards"); *see also Dynes v. Hoover*, 20 How. 65 (1857); *Ex parte Milligan*, 4 Wall. 2 (1866); and, *Duncan v. Kahanamoku*, 327 U.S. 304 (1946). Likewise, the *Toth* rationale must also preclude a trial on this Indictment, one where Mr. Williams would be denied his Sixth Amendment rights to proper venue and compulsory process. In any event, this particular grant of Constitutional

3

authority has, at least by implication, already been characterized by the Supreme Court to be incapable of achieving this result.

Third, the House believed that it could pass the Act under its power to "provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress" (U.S. Const. Art. I, Sec. 8, cl. 16). However, Mr. Williams, as the civilian husband of a member of the Armed Forces, can no more be considered to be part of the "Militia" (as the term is used in cl. 16) than he can be considered to be a member of the "land forces" (as the terms are used in cl. 14). Accordingly, Article I's grant of authority for regulation of the "Militia" is as inapplicable to the aims and objectives of the Act as Congress's authority to regulate the land and naval forces.

Finally, the House relied on the "necessary and proper" clause, which allows it to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof" (U.S. Const. Art. I, Sec. 8, cl. 18). The passage of this Act was nether "necessary" nor "proper" for carrying out any of the powers relied on by the House in justification of this legislation. This Act seeks to punish all alleged felonies committed by American civilian dependants of Armed Forces members on foreign soil while accompanying them abroad during peacetime. The expressly stated objective of this legislation, therefore, violates the Sixth Amendment's venue and compulsory process clauses; and, in doing so, the House only relied on its Article I powers to: (1) punish piracies and felonies committed on the High Seas, or Offences against

the Law of Nations (cl. 10); or, (2) to make rules for the Government and Regulation of the land and

naval Forces (cl. 14); or, (3) to organize, arm, and discipline, the Militia (cl. 16); and, (4) to make

all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers (cl.

18). None of these Article I powers even remotely relate to what Congress sought to do; and the

consequence of the Act was the creation of a new regime, not founded on any Article I power, of

fundamentally unfair trials for extraterritorial conduct, in violation of the express terms of the Sixth

Amendment.

**Conclusion**

WHEREFORE, Mr. Williams respectfully submits the foregoing *Addendum* to his *Motion*

*to Dismiss the Indictment* (Doc. 37).

Dated:  This 8th day of November, 2009.

Respectfully submitted,

Cynthia W. Roseberry – Executive Director
Federal Defender Program – Middle District of Georgia

By:

/s/ Morad Fakhimi
MORAD FAKHIMI
PA Bar ID. 204228 — DC Bar ID. 974050
Federal Defender Program – Middle District of Georgia
440 Martin Luther King, Jr. Boulevard, Suite 400
Macon, Georgia 31201
Tel:  (478) 743-4747 — Fax:  (478) 207-3419
Morad_fakhimi@fd.org

## CERTIFICATE OF SERVICE

I, Morad Fakhimi, hereby certify that on November 8, 2009, I electronically filed the foregoing *Addendum to the Defendant's Motion to Dismiss* with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

/s/ Morad Fakhimi
MORAD FAKHIMI
PA Bar ID. 204228 — DC Bar ID. 974050
Federal Defender Program – Middle District of Georgia
440 Martin Luther King, Jr. Boulevard, Suite 400
Macon, Georgia 31201
Tel: (478) 743-4747 — Fax: (478) 207-3419
Morad_fakhimi@fd.org