UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| DWAIN WILLIAMS, | : | |
| | : | Crim. No. 7:09-cr-8 |
| Movant, | : | |
| | : | Civil No. 7:14-cv-203 |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | 28 U.S.C. § 2255 |
| Respondent. | : | |
| | : | |

**RESPONDENT UNITED STATES' POST-HEARING BRIEF IN OPPOSITION TO MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255 (Section 2255 Rules), and this Court's Order, the United States submits this post-hearing brief in opposition to the motion of Dwain Williams to vacate, set aside, or correct sentence. The United States opposes the motion and incorporates by reference and reasserts its prior pleadings in this matter.

The Court set a hearing at which it received evidence regarding Petitioner's claim that trial counsel provided ineffective assistance in failing to investigate and present evidence that would have indicated the events at issue did not occur as put forth by the victim. Doc. 177. At the hearing, two witnesses testified, Petitioner Dwain Williams and trial counsel D. Nicole Williams.

The testimony of the two witnesses varied widely as it related the issues related to the pre-trial investigation. Petitioner's post-hearing brief seems to assume that the Court will just accept Petitioner's testimony as fact rather than considering all of the evidence. The

Government shows that it is the Court's duty to consider all the evidence and resolve any inconsistencies in order to determine the facts as they relate the allegations of ineffectiveness put forward by the Petitioner. Doing so demonstrates that Petitioner has not carried his burden. He asks the Court accept only his testimony as to what he believes these witnesses might have testified to had they been called. This is type of evidence is not entitled to much weight by a fact-finder. His testimony is contradictory to that of Ms. Williams, contradictory within itself, and contradictory to the record of the case.

## **The Petitioner Failed to Demonstrate an Ineffective Investigation**

Perhaps most tellingly, Ms. Williams testified that she "basically begged" Petitioner to assist her "with the case and provide [her] with any kind of information to help with this defense." (Trans at 116). In response, Petitioner provided only potential character witnesses, many of whom were called at trial. Ms. Williams also testified that she: 1) explained to Petitioner that she believed it a good idea to challenge the indictment on the basis of lack of venue/jurisdiction because the alleged criminal acts occurred in Okinawa, Japan and to file a Motion to Suppress his statement as having been given involuntarily (Trans. p. 93-95); 2) reviewed the discovery with him particularly highlighting their joint review of his recorded statement and the recorded phone call between he and his wife, Marcie (Trans. p. 96); 3) conducted mock examinations of Petitioner in an attempt to prepare him to testify well (Trans. p 98); 4) consulted with an expert regarding possible trial testimony and cross-examination of the Government expert and/or the alleged victim (Trans. p. 103); and, 5) engaged a jury consultant (Trans. p. 111).

Petitioner testified on direct that Ms. Williams did not: 1) review discovery; 2) discuss motions to file on his behalf; or, 3) discuss trial strategy or the theory of defense with him.

(Trans. p. 7-8); or 4) discuss his potential testimony with him prior to the trial. Petitioner estimated that he attended 10 to 15 meetings with Ms. Williams at her office (Trans. p. 9) but would have this Court believe that the only things that were discussed dealt with his grooming habits. (Trans.p. 8). It strains credulity to believe that a man would take time away from work and expend the resources necessary to travel from Pelham to Albany that many times to discuss trimming his beard over and over again. In contradiction of that testimony, Petitioner later admitted that Ms. Williams: 1 )showed him some of the discovery--the DNA report and told him that his DNA had not been recovered on the comforter of his step-daughter (Trans. p. 52); 2) told him about motions that were being filed on his behalf (Trans. p. 54); 3) listened as he described the potential testimony of his witnesses (Trans. at 56); 4) discussed the plan to try to show his step-daughter to be a liar; (Trans. p. 57); and, 5) had him draw diagrams of the residences in which the family resided in Japan (Trans. p. 58).

At trial, during Petitioner's testimony regarding the encounter with the victim during a thunderstorm, Ms. Williams and other staff members of her office put on a pantomime of the encounter which included taping off a section of the courtroom to simulate the bed and having the staff members lie atop one another as placed by Petitioner. (Trial transcript, Vol II, p. 207-209) This clearly supports Ms. Williams testimony regarding their extensive testimony preparation and severely undercuts Petitioner's version of events that that was no preparation because Ms. Williams lost her notes.

Petitioner claims that he prepared a list of witnesses for Ms. Williams and that she said she lost that list. (Trans. p. 14-15). Petitioner claims that those persons could have testified as to his step-daughter having falsely made an allegation of sexual assault against a bus driver in Japan and to his step-daughter having kept a series of diaries in which she recorded that he hated

3

him, hated her mom and that she wanted to have sex with boys. (Trans. 16). Petitioner has done nothing to support his testimony on these points. There have been no affidavits of the proposed witnesses, no testimony by an investigator as to what their testimony at trial might been, nor were they subpoenaed to appear and offer testimony at the evidentiary hearing on this matter.

The Government first submits that the Petitioner has failed to carry his burden to establish that any of his allegations of deficient performance on the part of Ms. Williams are true. Rather, the Government suggests that the evidence shows that despite Ms. Williams begging the Petitioner to assist her in formulating a defense, Petitioner did not identify potential witnesses, tell Ms. Williams about these diaries of the victim or the history of the victim regarding past allegations of abuse.

## Petitioner has Failed to Establish Prejudice

Assuming arguendo that Petitioner's testimony alone, convinces this Court that these witnesses could have offered testimony about prior allegations, diaries and promiscuity, Petitioner has done nothing whatsoever to attempt to demonstrate prejudice. In particular, Petitioner has not addressed the potential admissibility at trial of said evidence.

## The Diaries were Inadmissible Hearsay

Beginning with the diaries and assuming for purposes of this argument that they existed, were authored by the victim, and contained generally what has been testified to by Petitioner, the Government shows that the statements contained within the diaries would be classic hearsay—out-of-court statements of the declarant offered for the truth of the matter asserted—and thus impermissible absent an exception under Federal Rule of Evidence 803. Petitioner has not suggested a basis for their admission. The Government suggests that there is no applicable exception and that the statements allegedly contained within the diary would not have been

4

admissible as evidence.

## The Contents of the Diaries were Either Inadmissible or of Extremely Limited Impeachment Value

Although Petitioner fails to point it out, the Government recognizes the possible argument that the contents of the diaries might have lead to questions on cross-examination of the victim. However, since Petitioner has failed to produce the diaries, analysis on this point as juxtaposed against the testimony of the victim is difficult. As a general rule though the witness might have been confronted with an arguably inconsistent statement in the diary and asked whether or not she had previously made the statement. Assuming she agreed upon confrontation that she had at some point expressed she hated either her mother or the Petitioner; the Government suggests that that would be of limited impeachment value. Most, if not all teenagers express their disagreement with a parent by saying they hate them. It is almost a foregone conclusion that the jurors would have experienced such and given little regard to the impact of these sentiments on the truthfulness of the witness.

As to any statements in the purported diaries, which might have demonstrated the victim's sexual predisposition, the Government suggests those would have been inadmissible pursuant to Federal Rule of Evidence 412. This rule provides that evidence offered to prove the victim's sexual predisposition is inadmissible. Again, Petitioner, despite bearing the burdens of production and persuasion in this matter, has not offered to the Court any explanation of how this bar might have been overcome such that the evidence might have been admitted for consideration by the jury at his trial. Even if the evidence had been admissible, as explained by Ms. Williams at the evidentiary hearing, strategically it might have been a poor choice to attempt to paint the victim as sexually promiscuous in the face of the Government's expert who would

have testified, without contradiction, that such early promiscuity would have been a sign of sexual abuse being perpetrated against the victim.

### The Purported Previous False Allegation of the Victim was Inadmissible

Again assuming for purposes of argument that the victim in this case had, in fact, previously made an untrue allegation of sexual misconduct against another person, Petitioner has failed to demonstrate the fact that this was not brought up at his trial results in prejudice. He has not offered any ground for admissibility of this information. It might be a prior statement of the witness but it is not at all related to the matters about which she was testifying such that it might have been offered as a prior inconsistent statement for purposes of impeaching her. Assuming that it might have been proffered solely for impeachment value, it likely would have been prohibited by Federal Rule of Evidence 608(b) which generally prohibits extrinsic evidence of specific instances of a witness's conduct absent a criminal conviction for the same..

The Government submits that Petitioner's motion should be DENIED as he had failed to demonstrate ineffectiveness as that term has been explained by the courts as described more fully in prior pleadings.

RESPECTFULLY SUBMITTED, this the 7th day of July 2017.

                G.F. PETERMAN, III

                UNITED STATES ATTORNEY

BY:   /s/ LEAH E. McEwen
        Leah E. McEwen
        Georgia Bar No. 490763

Assistant United States Attorney
United States Attorney's Office
Middle District of Georgia
201 W. Broad Avenue, 2nd Floor
Post Office Box 366
Albany, Georgia 31702

## CERTIFICATE OF SERVICE

I certify that I electronically filed the **Respondent United States' Post-hearing Brief in Opposition to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** with the Clerk of the Court using the CM/ECF , notifying:

Keith E. Golden
923 E. Broad Street
Columbus, OH.  43205-1101

This the 7th  day of July, 2017.

BY:   /s/LEAH E. McEwen
Leah E. McEwen
Georgia Bar No. 490763

Assistant United States Attorney
United States Attorney's Office
Middle District of Georgia
201 W. Broad Avenue, 2nd Floor
Post Office Box 366
Albany, Georgia 31702